UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **TRISTIAN MOORE,** | ) | **CASE NO. 1:15 CV 471** |
| | ) | |
| Plaintiff, | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| v. | ) | |
| | ) | **OPINION AND ORDER** |
| **HORSESHOE CASINO,** | ) | |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J.:**

*Pro se* Plaintiff Tristian Moore filed this action against the Horseshoe Casino ("the Casino") in Cleveland, Ohio. In the Complaint, Plaintiff asserts he and his friend were asked to leave the Casino after employees witnessed his friend taking money from the bar and interpreted the action as theft. He asserts claims for libel, slander and racial discrimination. He seeks monetary damages.

**I.  BACKGROUND**

Plaintiff alleges that he and his friend Foster Hayes planned to meet at the Casino on January 17, 2015 to watch a Cleveland Cavaliers basketball game that was airing at 10:30 p.m. He entered the Casino after 11:00 p.m. and found his friend sitting at a slot machine on the first floor watching the game on the flat screen television positioned on a wall near him.  Plaintiff sat next to his friend at an adjacent slot machine.  Plaintiff does not indicate that either he or his friend were gambling on the slot machines.  It appears they were merely sitting at the machines while they watched the game.  After twenty or thirty minutes, a Casino security officer

approached them, and asked them to move on. They indicated they were watching the game and the security officer suggested they watch the game elsewhere. Plaintiff indicates they interpreted that statement to mean they had to watch the game in another area of the Casino.

Plaintiff alleges he and his friend moved to the bar area. He claims he watched other televised sporting events from the bar on numerous occasions, including the previous night and did not have a problem. He does not indicate that he and his friend ordered beverages or food on the evening in question. He states that a woman approached his friend and offered to buy him a drink. His friend accepted the offer and the woman placed a ten dollar bill on the bar, a gesture Plaintiff and his friend interpreted as an attempt to pay the bartender for the drink. His friend changed his mind about the drink and removed the money from the bar, placing it in his pocket. Shortly thereafter, Plaintiff and his friend were approached by security officers and a police officer. They were asked for identification, which they provided. They were told they had been observed taking money off of the bar. They were also told they were loitering. They denied this statement claiming they were not just walking around doing nothing; they were watching the game as well. Plaintiff admits he became emotional and started to loudly argue with the officers. Plaintiff and his friend were asked to leave. The Head of Security told Plaintiff and his friend they were banned from the Casino.

Plaintiff claims the accusations against him were not true. He brings claims for libel and slander. He also states he is upset at the way he was treated and he thinks it may have been due to his race. He states he is a college student and has no reason to steal money. He would like the Casino to compensate him for "their handling of this situation" in the amount of $100,000.00.

## II. LAW AND ANALYSIS

**Standard of Review**

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is required to dismiss an *in forma pauperis* action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). An action has no arguable basis in law when the Defendant is immune from suit or when the Plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke*, 490 U.S. at 327. An action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible." *Denton v. Hernandez*, 504 U.S. 25, 32 (1992); *Lawler*, 898 F.2d at 1199.

A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the Complaint are true. *Bell Atl. Corp.*, 550 U.S. at 555. The Plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id.* In reviewing a Complaint, the Court must construe the

pleading in the light most favorable to the Plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998).

**Discrimination**

Plaintiff does not indicate a particular cause of action he intends to assert to support his discrimination claim. There are several possible causes of action he could be attempting to assert.

### 42 U.S.C. § 1983

One possible statute, 42 U.S.C. § 1983, provides a cause of action for denial of equal protection under the Fourteenth Amendment against state government officials. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981). The Casino is a private party, not a government entity. A private party may be held liable under § 1983 only when the party "acted together with or ... obtained significant aid from state officials" and did so to such a degree that its actions may properly be characterized as "state action." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A Defendant may also be considered a state actor if the Defendant exercises powers traditionally reserved to a state. *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 352 (1974). There are no facts in the Complaint to suggest that in this case, the Casino could be sued as a government entity under § 1983.

### 42 U.S.C. § 1981

Another statute, 42 U.S.C. §1981 prohibits intentional racial discrimination by both public and private actors, in the context of contractual relationships. *Amini v. Oberlin College*, 440 F.3d 350, 358 (6th Cir. 2006); *Chapman v. Higbee Co.*, 319 F.3d 825, 829-32 (6th Cir. 2003); *Christian v. Wal–Mart Stores, Inc.*, 252 F.3d 862, 867–68 (6th Cir. 2001). To state a

claim under § 1981 in the non-employment context, the Plaintiff must allege facts showing that: (1) he belongs to a protected class of persons who are subject to discrimination on the basis of their race; (2) he sought to make or enforce a contract for services ordinarily provided by the Defendant; and (3) he was "denied the right to enter into or enjoy the benefits or privileges of the contractual relationship" in that (a) he "was deprived of services while similarly situated persons outside the protected class were not" or (b) he was treated in a "markedly hostile manner" and in a manner that a reasonable person would find "objectively discriminatory." *Christian*, 252 F.3d at 872; *see also Keck v. Graham Hotel Sys., Inc.*, 566 F.3d 634, 639 (6th Cir. 2009); *Amini*, 440 F.3d at 358.

In this case, Plaintiff alleges he is African American, satisfying the first element of the prima facie case for a § 1981 claim. The inquiry therefore moves to the second element, to determine whether Plaintiff has alleged sufficient facts to suggest he sought to make or enforce a contract for services ordinary provided by the Casino. Section 1981(b) defines "make and enforce contracts" as "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). Although the statute's protections apply to those who would enter a contract, in order to prevail a Plaintiff must identify a particular contract which they sought to enter but were prevented from doing so for racially-motivated reasons. *Domino's Pizza, Inc. v. McDonald*, 126 S.Ct. 1246, 1250 (Feb. 22, 2006); *Christian*, 252 F.3d at 872 (holding that Plaintiff must show that he "sought to make or enforce a contract for services ordinarily provided by the defendant."); *Youngblood v. Hy-Vee Food Stores, Inc.*, 266 F.3d 851, 855 (8th Cir. 2001) ("The requirement remains that a Plaintiff must point to some contractual relationship

in order to bring a claim under Section 1981"); *Lewis v. J.C. Penney Co., Inc.*, 948 F.Supp. 367 (D. Del. 1996) (holding that, in order to establish a contract claim under § 1981, "Plaintiff must point to some contractual relationship with [defendant] in order to bring her claim.")).

While the Sixth Circuit has not provided a comprehensive analysis of the "make and enforce contracts" clause, the Court has indicated that in order to satisfy the clause in the commercial context, Plaintiff must show that he "intended to make a purchase and was asked to leave the establishment in order to prevent [him] from making the purchase on account of [his] race...." *Christian*, 252 F.3d at 873 (citing *Watson v. Fraternal Order of Eagles*, 915 F.2d 235, 243 (6th Cir. 1990)). In *Christian*, the Court also concluded that it had "no trouble" finding the Plaintiff sought to enter into a contract ordinarily provided by the Defendant store because the Plaintiff "had selected merchandise to purchase, had the means to complete the transaction, and would, in fact, have completed her purchase had she not been asked to leave the store." *Id*. at 874.

Other courts that have considered the clause have held that a Plaintiff must allege interference with an actual, as opposed to speculative, contract interest. In *Hampton v. Dillard Dep't Stores, Inc.,* 247 F.3d 1091, 1117-18 (10th Cir. 2001), the Tenth Circuit rejected an African American woman's § 1981 claim that her ejection from a store was racially-motivated because she failed to show that she planned or attempted to make a purchase at the store. The Court refused to extend § 1981 "beyond the contours of a contract" and held that "there must have been interference with a contract beyond the mere expectation of being treated without discrimination while shopping." *Hampton*, 247 F.3 d at 1118. In *Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 751-53 (5th Cir. 2001), the Fifth Circuit found the Plaintiff had not

been prevented from making or enforcing contracts when a store employee observed her browsing in the store and alerted security that she suspected plaintiff of shoplifting. The security officer followed the Plaintiff to the parking lot and copied down her license plate. In analyzing the Plaintiff's § 1981 claim, the court held that she was required to "establish the loss of an actual, not speculative or prospective, contract interest" and there was no there was no evidence indicating that she "made any tangible attempt to purchase, or to return, specified goods at the store, or to enter any other contractual agreement with Dillard's, at any time during the course of the ban." *Id.*. at 751-53. *See Horne v. J.C. Penney Corp.*, No. 5:05 CV 27, 2006 WL 1139918, at *5 (W.D. Mich. Apr. 26, 2006)("Beyond the fact that Plaintiffs were browsing in J.C. Penney for a significant period of time, there is no evidence that they sought an actual contract relationship with J.C. Penney.").

Here, Plaintiff does not allege facts to suggest he was denied the right to make or enforce a contract with the Casino. He and his friend do not appear to have been patrons of the Casino on this evening. Plaintiff alleges they sat at a slot machine to watch the basketball game on the television, but he does not allege that they were gambling. He indicates a security officer approached them and asked them to watch the game elsewhere. They relocated to the bar area of the Casino. Plaintiff indicates they continued to watch the game from the bar but he does not allege that they ordered drinks or food. When a woman attempted to purchase a drink for Plaintiff's friend, he refused the gesture and pocketed the money she had left for the bartender to pay for the drink. There are no allegations in the Complaint which reasonably suggest that Plaintiff would have ordered food, or drink, or would have gambled at the Casino if he had not been asked to leave. In fact, Plaintiff was asked to leave, in part, because he was not utilizing

-7-

the services of the Casino, nor was he making purchases at the bar. In the absence of any allegation suggesting Plaintiff was denied the opportunity to purchase food or drink or to gamble, or was ejected from the Casino before he could avail himself of these services, he failed to establish that he sought to make or enforce a contract for services ordinarily provided by the Defendant; and was "denied the right to enter into or enjoy the benefits or privileges of the contractual relationship" to meet the second and third elements of a claim for relief under §1981.

Moreover, even if Plaintiff had alleged facts to suggest the Casino employees denied him the right to enter into or enjoy the benefits of a contractual relationship, he also failed to allege facts to state a claim of intentional racial discrimination under § 1981. The third prong of the *Christian* test is divided into two sub-parts. First, a Plaintiff can show that he was deprived of services while similarly situated persons outside the protected class were not. *Christian*, 252 F.3d at 872. Plaintiff states he is African American; however, he does not state the race of his friend, nor does he refer to the races of the Casino security officers and employees. He does not indicate the races of the patrons in the bar that were not asked to leave. He does not allege facts to suggest he was singled out for treatment because of his race.

As an alternative to showing differing treatment, in the commercial establishment context, Plaintiff can also establish a *prima facie* case of discrimination by showing he received service in a "markedly hostile manner ... [that] a reasonable person would find objectively discriminatory." *Christian*, 252 F.3d at 872. In determining whether a Defendant's actions rise to the level of being markedly hostile, courts consider whether the conduct is: " '(1) so profoundly contrary to the manifest financial interests of the merchant and/or [its] employees; (2) so far outside of widely-accepted business norms; and (3) so arbitrary on its face, that the

conduct supports a rational inference of discrimination.' " *Id*. at 871; *Keck v. Graham Hotel Sys., Inc.*, 566 F.3d 634, 641 (6th Cir. 2009). Under this prong Plaintiff must show he was treated in an objectively discriminatory manner on account of his race. Numerous district courts have examined cases under this sub-prong and have found that far more serious examples of racially charged conduct-usually including racial epithets-are required to establish a *prima facie* case under *Christian*. *See, e.g., Unroe v. Board of Education Rock Hill Local School*, No. 1:040CV-00181, 2006 WL 22081 at * 16 (S.D. Ohio Jan. 4, 2006) (denying summary judgment for Defendants where Defendant's employee said "I don't want them kind around here"); *Airbrush Express, Inc. v. Jefferson Mall Co., L.P.*, No. Civ. A. 03-691-C, 2005 WL 1567324 at *1, *6 (W.D. Ky. June 30, 2005) (denying summary judgment for defendants in part where Defendant's assistant manager indicated that Plaintiff's booth in mall attracted too many "African-American" or "African" clients); *Leach v. Heyman*, 233 F.Supp.2d 906 (N.D. Ohio 2002) (denying summary judgment for Defendants where Defendant cashier called African American patron by a racially derogatory term, threatened the patron with violence, physically assaulted the patron, and tried to push the patron out of store).

In this case, Plaintiff does not allege sufficient facts to suggest he was treated in a markedly hostile manner that others would consider objectively discriminatory. Casinos are business establishments in which large sums of money change hands throughout the day, necessitating increased security measures to ensure the safety of their patrons and employees. Plaintiff and his friend were sitting at the slot machines but were not gambling. When they were approached by security, they indicated they were there to watch the game and were asked to watch the game elsewhere. They relocated to the bar but did not order food or drinks.

Plaintiff's friend removed money from the bar which was intended to purchase a drink. When that action was observed by security, without the benefit of hearing the conversation between Plaintiff's friend and the woman who offered to buy him a drink, the action was construed as theft of money from the bar. Security knew Plaintiff and his friend were together because they had been asked to move on earlier in the evening. Although Plaintiff was not observed taking money from the bar, he was asked to leave with his friend because he was not purchasing food or beverages or gambling. Plaintiff acknowledges he became loud and emotional in response to his interaction with security. While this situation potentially could have been handled better by all parties involved, there are no factual allegations suggesting it was racially motivated. There are "many circumstances where markedly hostile treatment, even in a purportedly service-oriented industry, would raise no inference of racial animus, but rather it would simply be yet another example of the decline of civility." *Lizardo v. Denny's, Inc.*, 270 F.3d 94, 102 (2d Cir. 2001). Section 1981 is not a code of civility for the restaurant or casino industry, but a section of the law prohibiting discrimination based on race. *Miller v. Freedom Waffles, Inc.*, No. CIV.A. 306CV159, 2007 WL 628123, at *2 4 (W.D. Ky. Feb. 23, 2007). While being asked to leave the Casino was understandably embarrassing for the Plaintiff, he does not allege facts to reasonably suggest the actions of the security personnel were racially motivated.

### **Title II**

In addition, Plaintiff could be attempting to invoke this Court's jurisdiction based on Title II of the Civil Rights Act, 42 U.S.C. § 2000a, which prohibits discrimination on the basis of "race, color, religion, or national origin" in places of public accommodation. *See* 42 U.S.C. § 2000a(a); *see also Xuli Zhang v. Ross Store Inc.*, No. 1:10cv1328, 2011 WL 8129471, at *2

(E.D. Va. May 17, 2011).  As discussed above in addressing whether Plaintiff has stated a claim under 42 U.S.C. § 1981, Plaintiff has not alleged any facts suggesting that the Casino employees' conduct amounted to discrimination on the prohibited basis of race.  Moreover, Title II provides only for injunctive relief, not damages.  *See* 42 U.S.C. § 2000a–3(a); 42 U.S.C. § 12188(a); *see also Bradley v. School Bd. of City of Richmond*, 416 U.S. 696, 719 (1974) (quoting *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 401-02 (1968)).  Plaintiff seeks only monetary damages.

To the extent Plaintiff intended to assert a discrimination claim under some other statute, he failed to state a claim upon which relief may be granted.  Although the standard of review is liberal for *pro se* Plaintiffs, it requires more than bare assertions of legal conclusions.  *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726-27 (6th Cir. 1996).  The Complaint must give the Defendant fair notice of what the Plaintiff's claims are and the grounds upon which they rest.  *Bassett v. National Collegiate Athletic Ass'n*  528 F.3d 426, 437 (6th Cir. 2008).  Plaintiff does not identify a particular cause of action, leaving it to the Court and the Defendant to guess at a statute that may provide a legal basis for his claim.  This is not sufficient to meet federal notice pleading requirements under Federal Civil Procedure Rule 8.

Finally, Plaintiff's claims for libel and slander arise, if at all, under state tort law.  Supplemental jurisdiction exists whenever state law and federal law claims derive from the same nucleus of operative facts and when considerations of judicial economy dictate having a single trial.  *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724 (1966).  The Court, however, may exercise discretion in hearing state law matters.  *Id.* at 726.  In cases where the federal law claims are dismissed before trial, the state law claims should also be dismissed.  *Id.*

Having dismissed Plaintiff's federal law claims, this Court declines jurisdiction to hear Plaintiff's state law claims.

### III. CONCLUSION

Accordingly, Plaintiff's Application to Proceed *In Forma Pauperis* (ECF No. 2) is granted, and this action is dismissed pursuant to 28 U.S.C. §1915(e). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[1]

IT IS SO ORDERED.

        s/ Christopher A. Boyko
        CHRISTOPHER A. BOYKO
        UNITED STATES DISTRICT JUDGE

DATED: August 11, 2015

---

[1] 28 U.S.C. § 1915(a)(3) provides:

> An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith.